A. R. BARNES & Co. *et al.* Appellees, *vs.* THE CHICAGO
TYPOGRAPHICAL UNION No. 16, Appellant.

*Opinion filed February 20, 1908.*

1. LABOR UNIONS—*time to raise question of legal capacity is in
original suit for injunction.* The question whether a labor organi-
zation may be made a defendant to an injunction suit should be
raised in such suit, and if not raised, and the organization demurs
to the bill, appeals from the decree and gives bond as an organiza-
tion having a legal existence, the facts that it might not be regarded
as a legal entity at law and that the injunction decree is erroneous
cannot, upon appeal in a subsequent contempt proceeding for vio-
lating the injunction, be urged as justification for the contempt.

2. INJUNCTION—*appeal from a decree granting injunction does
not affect the injunction.* An appeal from a decree enjoining a de-
fendant from doing an act does not suspend the operation of the
injunction, and the doing of the act enjoined may be punished as
a contempt notwithstanding the appeal, and the contempt is a con-
tempt of the court which granted the injunction.

3. SAME—*power to punish for contempt is in the court whose
order is disobeyed.* The power to punish a contempt is in the court
whose order is disobeyed and whose dignity and authority are de-
fied; and this is true whether the contempt proceeding is in the
name of the People for the purpose of maintaining the dignity and
authority of the court, or whether it is a civil proceeding to en-
force the authority of the court in the administration of justice be-
tween litigants.

4. SAME—*when court cannot punish for contempt while appeal
is pending.* If an injunction is mandatory and requires the doing
of some act to carry it into effect, or if, though negative in form,
it is in reality affirmative in its nature, the taking of an appeal,
which operates as a *supersedeas,* precludes the trial court from
entering any further orders in execution of the decree until the
appeal is disposed of, and hence, pending the appeal, precludes pun-
ishment for contempt for refusing to do the act required.

5. SAME—*court may punish for contempt, pending appeal, if an
injunction is merely prohibitory.* An injunction decree which is
merely prohibitory in form and in fact, is self-executing, and the
fact that an appeal is taken, even though it operates to prevent fur-
ther affirmative orders in execution of the decree, does not stay
the power of the court to compel obedience to the self-executing
decree by punishing the doing of the prohibited acts as a contempt.

6. SAME—*court cannot appropriate fine for contempt to the use
of injunction complainants.* In imposing a fine in a contempt pro-

ceeding for violating a prohibitory injunction the court has power to order the fine to be paid to the clerk of the court or in default thereof that an execution be issued, but it has no power to appropriate the fine to the use of the complainants in the injunction suit, by directing the execution to issue in the name of the People, for the use of the complainants..

SCOTT and FARMER, JJ., dissenting.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

WILLIAM H. BARNUM, for appellant.

TENNEY, COFFEEN, HARDING & WILKERSON, (HORACE KENT TENNEY, and JAMES H. WILKERSON, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellees, a number of printing firms in Chicago, who are members of the voluntary association known as the Chicago Typothetæ, organized for the promotion of their business interests, filed their bill of complaint in the superior court of Cook county against Chicago Typographical Union No. 16, the appellant, and certain individuals who were officers of the union, praying for an injunction restraining the defendants from picketing the premises of complainants, interfering with their employees, congregating about their premises for the purpose of compelling, inducing or soliciting said employees to leave their service, or doing other acts of that nature specified in the prayer of the bill. On October 11, 1905, a preliminary injunction was ordered as prayed for and a writ was issued and served. The defendants appeared and demurred to the bill, and, their demurrer being overruled, elected to stand by it. The court thereupon entered a final decree in the cause, enjoin-

ing and restraining the defendants, their agents and servants from doing any of the acts set forth in the prayer of the bill and the preliminary injunction. From that decree the appellant and other defendants appealed to the Appellate Court for the First District. On October 28, 1905, an appeal bond was filed and approved, in accordance with the order granting the appeal. The defendants continued to do the same acts from which they were enjoined, after the entry of the decree, and on December 9, 1905, the appellees filed their petition in said superior court against the appellant, and Edward R. Wright and Edward E. Bessett, two of its officers, praying for a rule against them to show cause why they should not be punished for contempt of court for violating the injunction. Appellant and said officers appeared and made defense, and upon a hearing the court fined appellant $1000 for contempt of the court in violating the injunction. From the judgment imposing the fine the appellant again appealed to the Appellate Court for the First District and the branch of that court affirmed the judgment. This appeal was then prosecuted from the judgment of the Appellate Court.

The first point made by counsel for the appellant in his argument is, that it is neither a natural nor an artificial person, and therefore it could not be made a defendant in this proceeding. The bill of complaint in the suit for an injunction in which the decree was entered alleged that appellant was a labor union organized and existing in the city of Chicago; that it had presented to appellees a contract to be executed by them in which appellant agreed to do certain things; that it had an executive committee, issued circulars, published a directory, exercised control over its members, furnished money to induce employees of appellees' to leave their service, and as an association interfered with their business and did various acts charged in the bill. The appellant came into court and demurred to the bill and appealed from the decree to the Appellate Court, giving its

bond, and not raising any question as to its legal capacity to be sued or as to its legal status. In this proceeding the appellant came into court and answered as an organization having a legal existence, with a constitution, by-laws and officers, and doing business to carry out the objects of the organization. The time and place to raise the question by what name and in what manner the association, or the aggregation of individuals of which it was composed, might be made defendant in a suit in equity was in the original suit. Whether it was no more than a mere partnership, with the rights and liabilities incident to that relation, or whether it had any definite legal status, was a question to be considered then. Joined with appellant were various officers in their capacity as representing appellant, and it does not appear that any objection was made that the association was not properly before the court. If it would not be regarded as a legal entity in an action at law, it does not follow that the decree was a nullity or that the association could violate the injunction with impunity. It is wholly immaterial in this proceeding whether the decree was erroneous or not, and the association is amenable to the court and the law for any violation of it.

The important question in the case, and the one to which the argument is almost wholly devoted, relates to the jurisdiction of the superior court to entertain this proceeding and punish appellant for violating the injunction after an appeal had been taken from the decree. The law is, that an appeal enjoining a defendant from doing an act does not suspend the operation of the injunction, stay it in any manner or disturb its operative force. The appeal does not have the effect of dissolving or suspending the injunction and the defendant acquires no right to disregard it by the execution of an appeal bond. The doing of the act enjoined may be punished as a contempt notwithstanding the appeal, and the contempt is a contempt of the court which granted the injunction. There is no controversy between counsel on this

question, and a reference to the works where the numerous authorities are collated will be sufficient: 2 High on Injunctions, (4th ed.) sec. 1698*a;* Elliott on Appellate Procedure, sec. 391; 2 Cyc. 913; 22 id. 1010; 7 Am. & Eng. Ency. of Law, (2d ed.) 55; 16 id. 436; 20 Ency. of Pl. & Pr. 1231.

An appeal which operates as a *supersedeas* creates no affirmative right and does not annul the decree of the lower court. Before there was any statute providing that no appeal from a decree dissolving an injunction should have the effect to continue in force the injunction unless it should be continued by the lower court or the court to which the appeal is taken, this court held in *Bressler* v. *McCune,* 56 Ill. 475, that in cases where the court below had awarded a temporary injunction, which was dissolved on final hearing, the injunction would remain in force pending an appeal.

Counsel for appellant says: "It is no part of our contention that a prohibitory or any other injunction can be violated with impunity pending an appeal, nor that, pending such appeal, the law allows or permits the defendant to do the prohibited act, nor that the law allows the defendant, by filing a bond, to procure, even temporarily, the right to do such act." His position is made clear by these statements: "The question is not whether a violation of a pending injunction decree, during an appeal therefrom, is contempt of court; that is not denied. The question is, when and by what court can such a contempt, if any, be punished." His claim is that the trial court's jurisdiction is suspended during the appeal, and that when the cause is re-instated therein after affirmance of its decree it can fine or imprison for contempts committed pending the appeal; and he says: "We have conceded all along that until reversed on appeal an injunction decree remains in force, and for that very reason that violation of it after appeal may be punished as contempts, but not so punished by the trial court during the pendency of the appeal."

The question being by what court the contempt can be punished, the natural answer would be, by the court whose order is disobeyed and whose dignity and authority are defied. And, indeed, it does not seem to be disputed that if the proceeding is in the name of the People, for the purpose of maintaining the dignity and authority of the court, an appeal would present no obstacle to it. Such a proceeding is wholly independent of the appeal or any question to be considered by the appellate tribunal, and we see no substantial distinction between a prosecution for contempt instituted for the purpose of punishing a person for disobeying an order of the court on the ground that its authority or dignity is in question, and one which is instituted to enforce the authority of the court in the administration of justice between litigants. The question whether the injunction was properly awarded or whether the decree was erroneous is not involved in either. A defendant cannot refuse to obey an injunction, however improvidently or erroneously granted, but he is bound, at his peril, to obey it while it remains in force. *Tolman* v. *Jones,* 114 Ill. 147; *Leopold* v. *People,* 140 id. 552; *Swedish-American Telephone Co.* v. *Fidelity and Casualty Co. of New York,* 208 id. 562.

Counsel for appellant says that this proceeding, being for a civil contempt, partakes of the nature of the original action, and that while a proceeding for criminal contempt is a separate and independent suit, the prosecution of which cannot be delayed by an appeal taken in the civil suit, in this case the proceeding is a part of the same suit and the court is deprived of jurisdiction to enter any further order until the appeal is finally disposed of. It is true that the appeal operated as a *supersedeas* in the suit in which the appeal was taken and that the court could not enter any further orders in the execution of the decree, but it does not follow that the court could not punish appellant for doing an act prohibited by the decree. If a decree is of a nature to require something to be done or a writ to be is-

sued and served, an appeal operates to supersede and prevent the issuing and service of such a writ. But the decree in this case requires no process or action for its enforcement. The cases relied upon by counsel are all of a nature requiring something to be done which was superseded by an appeal. In *Ex parte Thatcher,* 2 Gilm. 167, the county commissioners' court made an order removing from office the clerk of that court for refusing to enter an order made by the court. He appealed from the order of removal, and the court afterward ordered him to deliver up the books, papers and money to another person subsequently appointed. On refusing to deliver the same an order was made committing him to jail for fifteen days. This court held that the county commissioners' court had power to punish its clerk for contempt in refusing to enter up its orders but had no authority of law or jurisdiction to remove him from office; that the order of removal was a nullity, and that the court had no power to appoint another person after the appeal was perfected or to punish the clerk for refusing to deliver up the books. The decision was based on the want of jurisdiction, but it illustrates the rule that an appeal supersedes affirmative orders in the nature of an execution of a judgment. In the case of *People* v. *Prendergast,* 117 Ill. 588, and other like cases, there were appeals from orders to pay over money or to do some act of an affirmative nature, and if a decree is of that character an appeal prevents its execution. An attachment for contempt for disobedience of an order to pay money is a civil execution for the benefit of the injured party, though carried on in the form of a criminal process for contempt of the authority of the court. *Buck* v. *Buck,* 60 Ill. 105.

There are judgments and decrees which require something to be done for their enforcement and there are others which are simply prohibitory or self-executing, and others partake of the nature of both. A prohibitory decree which does not require anything to be done is self-executing. It

requires no process, but by force of the decree itself the party is bound to desist from the prohibited act. If an injunction is of a mandatory character, requiring something to be done, or if negative in terms but with the same effect, a proceeding for contempt in refusing to obey it is in the nature of an execution to enforce the command. An injunction the effect of which is to authorize one party to take possession of property or to do some act, although it may be negative in form as against the other party and merely commands the latter not to obstruct the former in taking possession of the property or doing the act, is in reality affirmative in its nature, and a proceeding for contempt would have for its object to accomplish the doing of the act. An appeal would stay any such proceeding, while it would have no such effect with respect to the power of the court to compel obedience to a self-executing decree. That distinction is clearly drawn in both High on Injunctions and Elliott on Appellate Procedure, above cited. Mr. High applies the rule to prohibitory injunctions, and says that the court which granted the injunction still has power to punish its violation notwithstanding the appeal, and Judge Elliott says that a *supersedeas* does not operate upon a self-executing judgment, and where the judgment in one part requires an execution for its enforcement and in another part does not require such a writ the *supersedeas* may operate only upon part of the judgment.

To adopt a rule that the court granting an injunction must stand idly by and see it violated while an appeal is pending and after the case is re-instated in that court may then proceed to punish would be attended with evil consequences. All that it would be necessary for a defendant to do to secure immunity until the case should be re-instated in the court would be to pray an appeal and file a bond. It has been said in some cases that an appeal is pending in the higher court from the time the appeal bond is filed and approved, and that is true so far as to suspend the power

of the court from which the appeal is taken to do anything for the purpose of executing the decree; but the court to which the appeal is taken does not acquire jurisdiction of the subject matter of that suit and cannot enter any order in the case until the transcript of the record is filed in that court. In such a case an appellee cannot even enter his motion to dismiss the appeal until the time fixed by the statute for the appellant to file a transcript of the record has elapsed; (*Reynolds* v. *Perry,* 11 Ill. 534;) and the court cannot dismiss the appeal or make any other order until enough of the record is filed to show a judgment or decree and an appeal therefrom. (*Cook* v. *Cook,* 104 Ill. 98.) During that period no court could act, according to the theory of counsel for appellant, and in the meantime all the fruits of the litigation might be lost and the law and the courts brought into deserved disrepute. When the transcript has been filed in the Appellate Court, if an act is committed which constitutes a contempt it is not a contempt of the appellate court but of the court which entered the decree, and which is conceded by all parties to remain in full force and effect. Our Appellate Courts have only appellate jurisdiction and can only review cases brought from inferior courts, and exercise such powers as are necessary to the maintenance and exercise of appellate jurisdiction. Even if an injunction is dissolved on final hearing and is continued by order of the Appellate Court pending the appeal, the injunction is still that of the court from which the appeal was taken. The Appellate Court reviews the record brought to it by the appeal, which includes nothing happening after the decree is entered, and the question whether the injunction was obeyed or disobeyed is not involved in the appeal. No reason is apparent to us why the superior court should be refused the right to maintain its authority as to a matter not affected in any way by the appeal and which is not dependent in any respect on the final outcome of the suit until the decree has been affirmed by

the Appellate Court, since the question whether the decree was erroneous or not is in no way involved in maintaining the existing status. If the court should be denied the right to compel obedience to the prohibition of the decree until the original case has completed its rounds through the courts, the appellees might lose all the benefits of their litigation and have their business ruined, although the decree should finally be affirmed. We are not prepared to adopt or declare such a doctrine.

By the final order of the superior court imposing the fine, appellant was ordered to pay the same to the clerk of the court, and it was further ordered that if such payment should not be made, execution should issue for the collection of the fine in the name of the People, for the use of the appellees. The judgment was in proper form and the court properly ordered execution in default of payment, but the execution should not be in the form directed. If the fine shall be paid to the clerk an execution will not be necessary, but if it becomes necessary to issue an execution it will not be for the use of the appellees, and the order will be modified by striking out that feature. There is no statute in this State which authorizes the appropriation of a fine imposed for a contempt of court, to the party injured by the act constituting the contempt or who prosecutes the proceeding for the contempt.

The form of the order for execution being modified, the record is free from error, and the judgment of the Appellate Court is affirmed.        *Judgment affirmed.*

SCOTT and FARMER, JJ., dissenting:

Fines for contempt may be imposed by any court of equity to punish a disregard of its dignity or authority. A fine for contempt by way of indemnity to the complaining party may not be imposed where, as in this State, there is no statute conferring the power so to do. (Rapalje on Contempt, sec. 133; *In re Rhodes*, 65 N. C. 518; *Morris* v.

*Whitehead,* 65 id. 637; *State* v. *Lonsdale,* 48 Wis. 348; *State* v. *Hasleps,* Wright, (Ohio,) 500; *Swift* v. *State,* 63 Ind. 81.)    As to this we are in accord with the majority.

The form of the execution awarded by the order indicates that the purpose of the superior court was to indemnify the appellees, although the law of this State does not warrant that course and although no evidence was heard to show the amount of damage sustained or expense incurred by appellees on account of the alleged violation of the injunction.    If such was the purpose we do not think this error can be cured in this court by making a fine inflicted by way of indemnity payable merely as a punishment for a violation of the injunction.    If the chancellor determined from his own knowledge of the circumstances that $1000 was required to indemnify appellees, and assessed the fine that such indemnity might be afforded, it cannot, we think, be said in this court that if he had not imposed a fine for that purpose he would have imposed a fine in the same amount by way of punishment for a disregard of the order of the court.    The modification of the decree in accord with the views of the majority of this court does not, in our judgment, cure the error.    There should be a reversal, with an order remanding the cause.