Records v. Tape Corp. and Broadcasting System v. Tape Corp.

UNITED ARTISTS RECORDS, INC. v. EASTERN TAPE CORPORA-
TION, G & G SALES, INC., J. M. PETTUS, J. H. PETTUS, FRED
G. DIXON, CHARLES DIXON, SUPER HITS, INC., SOUND
DUPLICATOR SERVICE, INC., RANDY C. DIXON, WHOLESALE
SALVAGE, INC., AND JOHN DOE 8 THROUGH JOHN DOE 200

COLUMBIA BROADCASTING SYSTEM, INC. v. EASTERN TAPE
CORPORATION, G & G SALES, INC., J. M. PETTUS, J. H. PET-
TUS, FRED G. DIXON, CHARLES DIXON, SUPER HITS, INC.,
SOUND DUPLICATOR SERVICE, INC., RANDY C. DIXON,
WHOLESALE SALVAGE, INC., AND JOHN DOE 8 THROUGH JOHN
DOE 200

MCA, INC. v. EASTERN TAPE CORPORATION, G & G SALES, INC.,
J. M. PETTUS, J. H. PETTUS, FRED G. DIXON, CHARLES
DIXON, SUPER HITS, INC., SOUND DUPLICATOR SERVICE,
INC., RANDY C. DIXON, WHOLESALE SALVAGE, INC., AND
JOHN DOE 8 THROUGH JOHN DOE 200

No. 7326SC28

(Filed 23 May 1973)

Costs § 1; Contempt § 7— violation of restraining order — contempt pro-
ceeding — indemnification of plaintiffs — counsel fees — costs
    In a contempt proceeding in which defendants were found to be
in civil contempt for violation of a temporary restraining order, the
trial judge had no authority to require defendants to compensate
plaintiffs for their damages arising from the contemptuous conduct,
to award counsel fees to plaintiff, or to tax the costs of the proceed-
ing against defendants.

APPEAL by plaintiffs from *Snepp, Judge,* 31 July 1972
Session of Superior Court held in MECKLENBURG County.

This appeal arises out of actions seeking injunctive relief
and compensatory damages for alleged unfair competitive prac-
tices. Plaintiffs are corporations engaged in the manufacture
and sale of phonograph recordings. Plaintiffs alleged and the
defendants admitted that the defendants had copied, by means
of magnetic recording devices, phonograph records originally
produced by the plaintiffs, and that the defendants sold the
magnetic recordings under the defendants' own labels in compe-
tition with the plaintiffs.

On 6 January 1971, a temporary restraining order was
entered in the action brought by United Artists Records, Inc.

(formerly Liberty/UA, Inc.) enjoining the defendants from any further appropriation of the performances recorded by the plaintiff and any further sale of the magnetic recordings in competition with the plaintiff. The temporary restraining order was affirmed on appeal to this Court [*Liberty/UA, Inc. v. Tape Corp.*, 11 N.C. App. 20, 180 S.E. 2d 414 (1971), *cert. denied*, 278 N.C. 702], and thereafter similar restraining orders were entered in the MCA, Inc. action and the Columbia Broadcasting System, Inc. action.

On 19 May 1972, the actions were consolidated for a hearing on orders issued, commanding the defendants to appear before the court and show cause why they should not be adjudged in contempt of the restraining orders previously granted. At the hearing, after finding the facts, the trial judge concluded that the defendants in all three cases were guilty of criminal contempt of the restraining orders issued in each case, and guilty of civil contempt of the restraining orders issued in each case. Judgment was entered fining the defendants G & G Sales, Inc., Eastern Tape Corporation and William T. Anderson $250 each for the criminal contempt violations, and sentencing the defendant J. H. Pettus to 20 days in the county jail for criminal contempt. All four defendants were ordered to submit to the court within 15 days evidence to satisfy the trial judge that the defendants were no longer "engaged in any conduct constituting civil and continuing contempt of the preliminary injunctions entered in these cases."

On 22 May 1972, the plaintiffs moved in the cause that the defendants G & G Sales, Inc., Eastern Tape Corporation, J. H. Pettus and William T. Anderson "be required to compensate plaintiffs for their damages arising from the contemptuous conduct as found by the court, and for expenses in proving said contempt to the satisfaction of the court," and accompanied their motion with an affidavit filed by one of the counsel for plaintiffs setting forth the amount of attorney expenses related to the prosecution of the contempt show cause orders.

On 4 August 1972, Judge Snepp entered an order denying the motion of the plaintiffs, and stating:

"The court concludes that as a matter of law such damages and expenses cannot be allowed by reason of the conduct of the persons and corporations found to be in contempt by

the court. The motion is therefore denied as a matter of law and not as a matter of discretion."

The plaintiffs appealed from the disallowance of their motion, assigning error.

*Smith, Moore, Smith, Schell & Hunter, by Jack W. Floyd and Harold N. Bynum, for plaintiff appellants.*

*Mraz, Aycock, Casstevens & Davis, by Gary A. Davis; Levine, Goodman and Murchison; and Richards, Shefte & Pinckney for defendant appellees.*

MORRIS, Judge.

Plaintiffs' appeal presents the single question whether a trial judge has authority to award remedial damages, costs, and attorneys fees resulting from defendants' conduct in violating a court order, the violation having been found by the court to constitute civil contempt.

Plaintiffs contend that the power to grant indemnifying fines to a private plaintiff is inherent in the courts of North Carolina. We disagree. In *In re Rhodes,* 65 N.C. 518 (1871), an injunction had been entered, ordering Sheriff Rhodes to re-deliver certain goods to named persons prior to an execution sale. The sheriff failed to deliver the goods as ordered, was adjudged in contempt of court, and ordered to " 'pay into the Court two thousand dollars for the use of the defendants (in that action,) as damages for the unlawful detention of the same, . . . ' " The Court held that since the trial judge had no jurisdiction of the cause, the contempt order was invalid. In a dictum statement, the Court continued:

> "We think it our duty also, to notice another point in the present case, lest our silence may be considered an approval of the order fining the Sheriff. Supposing the Judge to have had jurisdiction of the case, and that his order of the 12th of May, was lawful, he might have fined the Sheriff for a contempt of Court, in disobeying it. But a fine for contempt is a punishment for a wrong to the State, and goes to the State. We know of no law by which a Judge can direct a fine for a contempt of his Court, to be paid to a party to a suit, or can assess in favor of such party, damages which he has sustained by the delay or refusal of the Sheriff to obey an order in the cause."

In *Morris v. Whitehead,* 65 N.C. 637 (1871), the Court said, " . . . even if he had jurisdiction of the case, he had no authority to fine the defendant Wood for contempt, and order the fine to be paid to the plaintiff, as his damages from the breach of the injunction, assessed by the Court. . . . " We have found no further cases in North Carolina dealing with this subject matter. In other jurisdictions, there is both authority that indemnity may be secured in contempt proceedings, and authority to the contrary. See 17 C.J.S., Contempt, § 94; 17 Am. Jur. 2d, Contempt, § 113. At least one law review writer has attempted to discount the North Carolina dictum rules set forth in the *Rhodes* and *Whitehead* cases, *supra.* See Dobbs, *Contempt of Court: A Survey,* 56 Corn. L. Rev. 183 (1971).

However, we are of the opinion that the rule quoted above from *In re Rhodes, supra,* and reiterated in *Morris v. Whitehead, supra,* correctly states the law in North Carolina concerning the lack of authority in a trial judge to award indemnifying fines. In North Carolina, a proceeding for civil contempt is one instituted to preserve and enforce the rights of a private party to an action, and to compel obedience to a judgment or decree intended to benefit such parties. *Blue Jeans Corp. v. Clothing Workers,* 275 N.C. 503, 169 S.E. 2d 867 (1969); *Galyon v. Stutts,* 241 N.C. 120, 84 S.E. 2d 822 (1954). Criminal contempt is a term applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. *Blue Jeans Corp. v. Clothing Workers, supra; Dyer v. Dyer,* 213 N.C. 634, 197 S.E. 157 (1938). A contempt proceeding, whether civil or criminal, is *sui generis,* and criminal in nature in that the party who is charged with committing a forbidden act may be punished if found guilty, and that punishment may be awarded only for wilful disobedience. *Mauney v. Mauney,* 268 N.C. 254, 150 S.E. 2d 391 (1966); *In re Hege,* 205 N.C. 625, 172 S.E. 345 (1934). Although the distinction between civil and criminal contempt is often unclear, the primary purpose of a civil contempt proceeding is "to *punish* as for contempt when the act complained of was such as tended to defeat, impair, impede, or prejudice the rights or remedies of a party to an action then pending in court— . . . " , G.S. 5-8, and the primary purpose of a criminal contempt proceeding is to *punish* for contempt any person guilty of committing an act or omission specified in G.S. 5-1.

Thus, it may be seen that contempt in North Carolina is treated as an offense against "the majesty of the law," is essentially criminal in nature, and is superintended or controlled pursuant to statutory authority solely by means of punishment. Although it may be that the punishment differs for criminal and civil contempt, our statutory provisions for contempt embodied in G.S. 5-1, et seq., do not provide for any other means of enforcing the courts' power of contempt than by punishment, as befits the criminal nature of the proceedings. We hold that, by virtue of the criminal nature of contempt proceedings and the statutory provisions for enforcement of the contempt power by punishment only, a trial judge in North Carolina has no authority to award indemnifying fines or other compensation to a private plaintiff in a contempt proceeding.

We are also of the opinion that the trial judge correctly ruled that he had no authority to award attorneys fees to the plaintiff, even though the plaintiffs prevailed in the contempt proceeding. It is settled law in North Carolina that ordinarily attorneys fees are not recoverable either as an item of damages or of costs, absent express statutory authority for fixing and awarding them. *Bowman v. Chair Co.,* 271 N.C. 702, 157 S.E. 2d 378 (1967). Although provisions for the award of attorneys fees to the prevailing plaintiff exist in other jurisdictions, we have found no case law or statutory authority providing for such allowance in North Carolina. See 17 C.J.S., Contempt, § 96; 17 Am. Jur. 2d, Contempt, § 114; Annot., 43 A.L.R. 3d 793; Annot., 55 A.L.R. 2d 979. The case of *Blair v. Blair,* 8 N.C. App. 61, 173 S.E. 2d 513 (1970), is not authority for the plaintiffs' argument. Counsel fees may be awarded to a dependent spouse in an action for the support or custody of a minor child, by virtue of G.S. 50-13.6. And, where the petitioning spouse is no longer a dependent spouse, counsel fees in a proper case may be awarded by virtue of the court's authority to protect the interests of minor children in an action for the support or custody of a minor child. *Andrews v. Andrews,* 12 N.C. App. 410, 183 S.E. 2d 843 (1971). In *Blair,* the lawful authority of the court to award counsel fees under the facts in that case was enforced by means of the court's contempt power. In the case before us, no such authority to award counsel fees arises on the facts.

Finally, we hold that the trial judge correctly ruled that he had no authority to tax costs of the contempt proceeding

against the defendants. Court costs in North Carolina are recoverable only in the manner and to the extent provided by statute. McIntosh, N. C. Practice 2d, § 2531. As was stated previously, contempt proceedings are *sui generis* and criminal in nature. Although labeled "civil" contempt, a proceeding as for contempt is by no means a civil action or proceeding to which G.S. 6-18 (when costs shall be allowed to plaintiff as a matter of course), or G.S. 6-20 (allowance of costs in discretion of court) would apply. See *Hoskins v. Hoskins,* 259 N.C. 704, 131 S.E. 2d 326 (1963). The purpose of the proceeding is to compel obedience to an order or decree intended to benefit one of the parties to the litigation by punishment. As such, the effect of a proceeding as for contempt may be remedial in the sense that it aids the private party in the enforcement of an order in his favor, but in no sense does it provide a civil remedy or action to redress a private wrong nor is it equitable in nature.

We hold that the trial court properly denied the plaintiffs' motion. The order entered by Judge Snepp, denying the motion of the plaintiffs, is

Affirmed.

Judges CAMPBELL and BRITT concur.