An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1148
NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

R. SCOTT BEST,
    Plaintiff,

    v.

AMBER L. GALLUP,
    Defendant.

Wake County
No. 10 CVD 1893

Appeal by defendant from order entered 26 November 2012 by Judge Lori Christian in Wake County District Court. Heard in the Court of Appeals 19 February 2014.

*No brief, for plaintiff-appellee.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Joyce L. Terres, for defendant-appellant.*

HUNTER, Robert C., Judge.

Amber L. Gallup ("defendant") appeals from an order of contempt entered in a child custody dispute between herself and R. Scott Best ("plaintiff").[1] On appeal, defendant argues that the trial court erred by: (1) concluding that defendant was being held in both civil and criminal contempt; (2) holding

---

[1] Plaintiff did not file an appellee brief.

defendant in contempt without competent evidence to support the trial court's findings of fact and without findings of fact to support the conclusions of law; and (3) ordering purge conditions that are contrary to law and impermissibly vague.

After careful review, we affirm the trial court's order in part but reverse the award of attorneys' fees.

**Background**

Defendant and plaintiff were formerly involved in a romantic relationship and provided parental care to defendant's niece, "Valerie."[2] Plaintiff had no biological or legal relationship with Valerie. In 2008, defendant legally adopted Valerie, and the parties planned to marry upon plaintiff's return from a contract position in Iraq. While plaintiff was in Iraq, defendant informed him that she was ending their relationship. However, from December 2008 to September 2009, the parties continued to function as a family unit in some ways. It was not until plaintiff's return in September 2009 from his second contract position in Iraq that defendant informed plaintiff that she no longer wanted Valerie to call him "Daddy" and that defendant intended no further familial relationship to exist between Valerie and plaintiff.

---

[2] Valerie is a pseudonym used to protect the identity of the minor.

Since September 2009, plaintiff and defendant have been engaged in contentious litigation regarding which party was to have custody over Valerie. Throughout the process of the litigation, the trial court has entered the following orders: (1) an order dismissing plaintiff's motion for temporary custody, which was reversed by this Court in *Best v. Gallup*, 215 N.C. App. 483, 715 S.E.2d 597 (2011), *disc. rev. denied*, 365 N.C. 559, 724 S.E.2d 505 (2012), and remanded for a custodial schedule, as this Court ruled it was in the child's best interest to have visitation with plaintiff; (2) an order entered 19 September 2011 requiring defendant to surrender her passport to plaintiff's attorney and enjoining the parties from removing Valerie from the jurisdiction of North Carolina; (3) a temporary order entered 7 October 2011 requiring plaintiff to purchase health insurance for Valerie and schedule therapist appointments for her; (4) an order for temporary custody and visitation entered 9 November 2011 setting out a visitation schedule for plaintiff with Valerie and requiring defendant to cooperate with plaintiff's attempts at seeking therapy for Valerie; (5) an ex parte order for emergency custody entered 9 December 2011 placing Valerie in temporary physical and legal custody of plaintiff due to defendant's attempts to illegally purchase a

passport and transport Valerie out of the jurisdiction of the state; (6) a full order for emergency custody entered 1 February 2012 *nunc pro tunc* 14 December 2011, placing physical and legal custody of Valerie with plaintiff and granting defendant visitation rights; and (7) an order for temporary custody entered 17 April 2012 *nunc pro tunc* 14 February 2012 ("the 17 April order") granting defendant temporary primary physical custody and plaintiff temporary secondary physical visitation over Valerie, with plaintiff retaining the right to make all decisions regarding the child's therapist. The 17 April order further ordered that "[d]efendant shall ensure that the minor child attends every therapy session"; "defendant shall not allow the minor child to be present where people are saying derogatory things about plaintiff"; "defendant shall to [sic] control the environment and people surrounding the minor child"; and "plaintiff and defendant shall foster a feeling of affection between the minor child and the other party, and neither party shall do or say anything the reasonable effect of which would be to estrange the minor child from the other party or to impair the child's high regard for the other party[.]"

On 8 June 2012, plaintiff filed a motion for order to show cause and motion for attorneys' fees. Plaintiff argued that

defendant willfully violated provisions of the 17 April order by: (1) interfering with phone calls between plaintiff and Valerie; (2) interfering with the relationship between plaintiff and Valerie; (3) interfering with scheduled visitations; and (4) failing to ensure that Valerie attended every therapy session. After a hearing held 17 September 2012, the trial court entered an order holding defendant in continuing civil contempt, setting out sixteen conditions that must be completed to purge the contempt, and ordering defendant to pay plaintiff's reasonable attorneys' fees incurred in relation to the contempt hearing. Defendant filed timely notice of appeal from this order.

**Discussion**

**I. Conclusion as to Criminal Contempt**

Defendant's first argument on appeal is that the trial court erred by concluding that she was in both civil and criminal contempt. We hold that the trial court ordered civil, not criminal, contempt, and we will not disturb the order on this ground.

In contempt proceedings, the trial court's findings of fact are conclusive on appeal if they are supported by competent evidence, and its conclusions of law are reviewed *de novo*. *Hartsell v. Hartsell*, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573

(1990); *Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 143 (2009).

There are two kinds of contempt — civil and criminal. *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985). "A major factor in determining whether contempt is civil or criminal is the purpose for which the power is exercised." *Id.*

> Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties.

*Id.* (citation and quotation marks omitted). Pursuant to N.C. Gen. Stat. § 5A-21(c), "[a] person who is found in civil contempt under this Article shall not, for the same conduct, be found in criminal contempt under Article 1 of this Chapter."

Defendant argues that because the trial court concluded that she was "being held in criminal contempt" while simultaneously ordering that she be held in continuing civil contempt, the trial court erred by holding defendant in both civil and criminal contempt for the same conduct in violation of section 5A-21(c). This Court has previously rejected

defendant's argument in *Hancock v. Hancock*, 122 N.C. App. 518, 522, 471 S.E.2d 415, 418 (1996), where the trial court's contempt order stated that the plaintiff was in "willful, criminal contempt," but the character of relief indicated that the plaintiff was actually being held in civil contempt. This Court held that "the character of the relief is dispositive of the distinction between criminal and civil contempt, and where the relief is imprisonment, but the contemnor may avoid or terminate imprisonment by performing an act required by the court, then the contempt is civil in nature." *Id.* Thus, even though the trial court specifically concluded that it was holding the plaintiff in criminal contempt, this Court held that the contempt was civil, and not criminal, in nature, and therefore did not disturb the order based on the trial court's mistaken conclusion. *Id.*

Here, like the contemnor in *Hancock*, defendant may avoid her sentence of thirty days imprisonment by meeting the purge conditions included in the trial court's contempt order. Because "the character of the relief is dispositive of the distinction between criminal and civil contempt," we hold that the contempt order is actually civil in nature, and therefore the trial court did not improperly hold defendant in criminal

contempt, despite its legal conclusion to the contrary. *Hancock*, 122 N.C. App. at 522, 471 S.E.2d at 418.

## II. Findings of Fact and Conclusions of Law

Defendant next argues that the trial court's findings of fact are not supported by competent evidence, and the findings of fact do not support the trial court's conclusion that all of the statutory elements of civil contempt were met. We disagree.

"In contempt proceedings[,] the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978). "When a trial court sits as the trier of fact, the court's findings and judgment will not be disturbed on the theory that the evidence does not support the findings of fact if there is any evidence to support the judgment, even though there may be evidence to the contrary." *Atlantic Veneer Corp. v. Robbins*, 133 N.C. App. 594, 599, 516 S.E.2d 169, 173 (1999). "The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*." *Tucker*, 197 N.C. App. at 594, 679 S.E.2d at 143.

Pursuant to N.C. Gen. Stat. § 5A-21 (2013), failure to comply with an order of a trial court amounts to continuing civil contempt so long as:

> (1) The order remains in force;
>
> (2) The purpose of the order may still be served by compliance with the order;
>
> (2a) The noncompliance by the person to whom the order is directed is willful; and
>
> (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

At a show cause hearing, the trial court is the finder of fact, and it must enter a finding for or against the alleged contemnor on each of the elements set out in section 5A-21. N.C. Gen. Stat. § 5A-23(e), (f) (2013).

We hold that the trial court here properly entered findings as to each element of section 5A-21, and each of the trial court's findings are supported by competent evidence.

First, after listing all of the previous orders that it had entered in this case, concluding with the 17 April order that plaintiff claimed defendant had failed to obey, the trial court found as fact that "[a]t all times relevant to this hearing these orders were still in full force and effect and the purpose of these orders may still be served by compliance with its [sic]

terms." The 17 April order was the last substantive order entered before the trial court held defendant in contempt. In that order, the trial court included the provision that "[a]ll other orders are to remain in effect herein except as they are changed with the entry of this order." Thus, the trial court entered findings of fact as to the first two elements of section 5A-21, and there is competent evidence in the record to support the trial court's finding that its previous orders, specifically including the 17 April order, were in full force and effect and that their purposes could still be served by compliance.

Second, defendant argues that there is no competent evidence to support the trial court's finding that defendant's noncompliance with the 17 April order was willful. We disagree. "Willfulness in a contempt action requires either a positive action (a 'purposeful and deliberate act') in violation of a court order or a stubborn refusal to obey a court order (acting 'with knowledge and stubborn resistance')." *Hancock*, 122 N.C. App. at 525, 471 S.E.2d at 419. The trial court found as fact that:

> [S]ince the entry of the [17 April order], [d]efendant has willfully violated [the 17 April order] by:
>
> a. Interfering with the phone calls between Plaintiff and minor child;

b. Failing to foster a feeling of affection between the minor child and the Plaintiff;

c. Failing to control the environment and people surrounding the minor child, specifically Defendant's boyfriend Mr. Brian Kiddy;

d. Interfered with Plaintiff's scheduled visitation;

e. Failing to ensure that the minor child attends every therapy session.

These findings are supported by the following evidence: (1) defendant testified at the hearing on plaintiff's motion to show cause that she was in control of the phone that the parties had purchased for the purpose of the court-ordered phone calls between plaintiff and Valerie; (2) plaintiff testified that "more than half of the calls" that he made to Valerie went unanswered; (3) even though he gave defendant notice in advance, the phone call that plaintiff made on Valerie's birthday went unanswered; (4) due to the unanswered calls, plaintiff could not speak with Valerie twice a week as was ordered by the trial court; (5) plaintiff testified that Valerie's demeanor would change considerably after spending time with defendant and that she would say things like "You've been mean to me and my mommy" with "hostility in her voice" even though she is a "normal kid" when staying with plaintiff; (6) when he went to Valerie's

therapist's office to pick Valerie up after a scheduled appointment, plaintiff saw defendant's boyfriend Brian Kiddy ("Kiddy") videotaping Valerie and directing her to read to plaintiff a pre-typed list of reasons why she "didn't want to go" with plaintiff; (7) Kiddy said "[Valerie] is a prisoner in your home" in Valerie's presence at the doctor's office; (8) in the sixth-month span between Valerie's return to defendant's home and the hearing, plaintiff had one weekend visitation with Valerie; and (9) defendant failed to bring Valerie to a scheduled counseling appointment, and plaintiff was forced to pay the cancellation fee for the missed visit. Thus, the trial court had plenary evidence before it to find as fact that defendant willfully violated the 17 April order. Given the deference this Court affords the trial court's findings of fact, *McAulliffe v. Wilson*, 41 N.C. App. 117, 120-21, 254 S.E.2d 547, 550 (1979), we affirm these findings as supported by competent evidence.

Finally, defendant argues that the trial court failed to find as fact that she "is able to comply with the order or is able to take reasonable measures that would enable [her] to comply with the order." N.C. Gen. Stat. § 5A-21(a)(3). Defendant argues that because the contempt order merely states

that she "had" the means and ability to comply with the previous court orders, the trial court failed to meet its statutory burden of showing that she *currently* has such an ability. However, the trial court clearly stated that "[d]efendant is able to comply with the [17 April order]." Although this is included in the trial court's conclusions of law, it is more appropriately deemed a finding of fact, as it does not involve application of legal principles. *See Wiseman Mortuary, Inc. v. Burrell*, 185 N.C. App. 693, 697, 649 S.E.2d 439, 442 (2007).

Because the trial court entered findings of fact as to each element of section 5A-21 and each finding is supported by competent evidence, we affirm the trial court's conclusion that defendant violated the 17 April order and thus was properly held in continuing civil contempt.

### III. Purge Conditions

Defendant's final argument on appeal is that the trial court erred by ordering purge conditions that are either unsupported by law or unrelated to compliance with the 17 April order. We agree in part and reverse the award of attorneys' fees.

Pursuant to N.C. Gen. Stat. § 5A-23(e), "[i]f civil contempt is found, the judicial official must enter an order

finding the facts constituting contempt and specifying the act which the contemnor must take to purge himself or herself of the contempt." "The court's conditions under which defendant can purge herself of contempt cannot be vague such that it is impossible for defendant to purge herself of contempt, and a contemnor cannot be required to pay compensatory damages." *Watson v. Watson*, 187 N.C. App. 55, 65, 652 S.E.2d 310, 317 (2007) (citation omitted).

Defendant first argues that the purge conditions do not specify when the purge ends and are so vague that it would be impossible to purge herself of contempt. Defendant cites to cases where this Court has reversed "impermissibly vague" conditions. For example, in *Scott v. Scott*, 157 N.C. App. 382, 579 S.E.2d 431 (2003), this Court held that the trial court's order requiring the defendant to purge contempt "by not interfering with the plaintiff's custody of the minor children and [] by not threatening, abusing, harassing or interfering with the plaintiff or the plaintiff's custody of the minor" was "impermissibly vague" because the conditions did not "clearly specify what the defendant can and cannot do . . . in order to purge [himself] of the civil contempt." *Scott*, 157 N.C. App. at 393-94, 579 S.E.2d at 438-39 (citations and quotation marks

omitted). Here, each of the trial court's purge conditions listed a specific action that was either required or prohibited in order for defendant to purge herself of contempt. For example, the trial court ordered defendant to obey all previous court orders, ensure that phone calls between plaintiff and Valerie take place on Wednesdays and Fridays at 7:00 p.m., pay for all of Valerie's missed therapy sessions, and ensure that she attends three therapy sessions with plaintiff in a timely manner. Thus, we conclude that the trial court did not err by entering impermissibly vague purge conditions, because defendant can take specific action as specified in the trial court's order to purge herself of contempt.

Next, defendant contends that the purge conditions improperly modified the previous custody award. Defendant relies on *Kennedy v. Kennedy*, 107 N.C. App. 695, 703, 421 S.E.2d 795, 799 (1992), where this Court vacated a contempt order that changed custody of a child from joint custody to sole custody without the proper motion to modify custody required by N.C. Gen. Stat. § 50-13.7 (2013). Here, the trial court did not modify custody via the purge conditions. Primary custody remained with defendant both before and after the contempt order. Rather, the contempt order altered the previous orders'

phone call requirements between Valerie and plaintiff and set out more specific times for those calls, among other things unrelated to custody. Because the trial court did not modify custody, *Kennedy* is inapposite, and defendant's argument is overruled.

Defendant also argues that the trial court was not authorized to require payment of missed therapy appointments as a purge condition. This Court has established that when relief imposed in a contempt order is remedial rather than punitive, it is civil in nature and allowable in a civil contempt order. *See Bishop v. Bishop*, 90 N.C. App. 499, 504, 369 S.E.2d 106, 108-09 (1988) (citation omitted). "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court[.]" *Id.* Accordingly, since defendant was ordered to repay the cancellation fee to plaintiff that was incurred as a result of defendant's failure to ensure Valerie attended all therapy sessions, in contravention of a previous court order, we hold that this was a permissible remedial remedy.

Finally, defendant argues that the trial court erroneously ordered defendant to pay attorneys' fees as a purge condition. We agree. A trial court may not award attorneys' fees unless

specifically authorized by statute. *United Artists Records, Inc. v. Eastern Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 601-02, *cert. denied*, 283 N.C. 666, 197 S.E.2d 880 (1973). This Court has previously held that attorneys' fees may be awarded under N.C. Gen. Stat. § 50-13.6 to parties who successfully pursue a motion for contempt in child support and custody actions. *Wiggins v. Bright*, 198 N.C. App. 692, 695, 679 S.E.2d 874, 876 (2009). However, the trial court is required to enter two findings of fact before awarding attorneys' fees in such cases: (1) the party to whom the attorneys' fees are awarded is acting in good faith, and (2) that party has insufficient means to defray the expense of the suit. *Id.* at 696, 679 S.E.2d at 876. Here, the trial court made a factual finding that plaintiff was acting in good faith, but failed to enter a finding that he could not defray the expense of the suit. Therefore, because the trial court failed to enter the requisite findings of fact to support its award of attorneys' fees, we reverse that portion of the contempt order.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order holding defendant in civil contempt and specifying conditions that would allow defendant to purge this contempt,

but we reverse the trial court's award of attorneys' fees because it failed to enter the required findings of fact to support the award.

AFFIRMED IN PART; REVERSED IN PART.

Judges GEER and McCULLOUGH concur.

Report per Rule 30(e).